William R. Brennan, Jr., J.
Motor Vehicle Accident Indemnification Corporation (M. V. A. I. 0.) seeks an order vacating the claimant’s demand for arbitration duly served pursuant to section 6 of the Standard New York Automobile Accident Indemnification Endorsement on his own liability insurance policy. It is not disputed that claimant is an “insured”, that notice of claim was timely made, that the vehicle with which claimant’s vehicle came in contact was uninsured, and that other conditions precedent to arbitration have been met. M. V. A. I. C. claims, however, that its investigation, as well as its examination of the claimant under oath, establish that the vehicular contact was not accidental, but purposeful, and that it is accordingly without liability for such a willful tort committed by the operator of the uninsured vehicle.
*947 It is claimed by M. V. A. I. G. that Mr. Jerman and his passenger Miss Brinson, the claimant in a companion proceeding decided herewith, while riding in the insured vehicle on August 5,1960, were followed by a Mr. Edward Branch, a jealous suitor or jilted lover, who was operating the uninsured vehicle, and that Mr. Branch intentionally ran his car into the Jerman vehicle, forced it off the road into a telephone pole, and proceeded to back up and then ram into it once again.
Two questions are presented: First, must M. V. A. 1.0. respond in damages for a willful vehicular assault committed against an insured by the operator of an uninsured vehicle? If it must, then obviously this motion must be denied and the matter referred to the arbitrators. If not, however, the second question arises, i.e., should the factual determination of whether the collision was intentional or accidental be determined by the courts or by the arbitrators ?
In denying that it must respond in damages for willful vehicular assaults, M. V. A. I. 0. contends that any requirement that it do so would contravene the public policy of the State of New York, This court does not agree. The public policy referred to is that which prohibits indemnifying a wrongdoer for the wrong he has committed. As the Court of Appeals stated in Morgan v. Greater N. Y. Taxpayers Mut. Ins. Assn. (305 N. Y. 243, 248): “ Clearly the reason for the exclusion from coverage of an assault committed by or at the direction of the assured is that it would not be in accord with public policy to indemnify a person for losses incurred as a consequence of his criminal acts.” The reason underlying that policy is not that an insured party should not be compensated for his injury, but that the person willfully inflicting the injury should not receive the protection of indemnity. The function of M. Y. A. I. C., however, is not to indemnify a wrongdoer, but to compensate an innocent victim. M. Y. A. I. C. is entitled under the indorsement in insured cases, and under section 616 of the Insurance Law in qualified person cases, to proceed against the wrongdoer to recover any sums it may have been called upon to pay because of his acts or omissions. It is the wrongdoer who must indemnify M. Y. A. 1.0., not the converse. Thus, the public policy announced in indemnity cases has no bearing whatsoever upon M.Y.A.1.0.
Aside from any considerations of public policy, however, there still remains the fundamental question of whether or not the Legislature in enacting the Motor Yehicle Accident Indemnification Law (Insurance Law, art. 17A, added by L. 1958, ch. 759), intended that M. V, A. I, C. respond in damages for willful vehicu *948 lar assaults. We hold that it did not. The word “ accident” was used repeatedly in subdivision (2) of section 600 (declaration of purpose) and in subdivision 2-a of section 167 (standard indorsement provision) of the Insurance Law. It is also used as the fundamental standard of liability in the New York Automobile Accident Indemnification Endorsement. The word has had precise judicial interpretation, and the Legislature is presumed to have been aware of such interpretation at the time the act was adopted. The term “ accident ” has most recently been defined by the Court of Appeals as “ an event of an unfortunate character that takes place without one’s foresight or expectation.” (Johnson Corp. v. Indemnity Ins. Co. of North America, 7 N Y 2d 222, 228 [definition taken from Matter of Croshier v. Levitt, 5 N Y 2d 259, 269].) There is no doubt that intentional assaults are not within its range of meaning (McCarthy v. United Services Auto. Assn., 24 Misc 2d 79) and it is accordingly concluded that M. V. A. I. C. need not respond in damages for intentional vehicular assaults committed by uninsured drivers.
There remains for decision the question of whether the factual determination should be made by the court or by the arbitrators. We hold that the question is arbitrable. As was recently pointed out by Mr. Justice Jambs J. Conroy in Matter of McGuinness (M. V. A. I. C.) (32 Misc 2d 949) the determination of which questions are arbitrable and which are for the courts depends upon a precise reading of the agreement to arbitrate contained in the indorsement. Thus, there is no agreement to arbitrate the questions of the status of the claimant as an insured (McGuinness, supra), or the timeliness of notice (Matter of Motor Vehicle Acc. Ind. Corp. v. Brown, 15 A D 2d 578). Such questions are preliminary. Unless they, and perhaps similar questions, are determined by a court prior to arbitration, it cannot be ascertained whether the indorsement itself is effective. Once these preliminaries have established the effectiveness of the indorsement, however, the remainder of the dispute — i.e., liability and damages — is for the arbitrators.
The question of the legal liability of the owner or operator of the uninsured automobile for bodily injury is within the exact language of the agreement to arbitrate. As pointed out by Judge Conroy in Matter of McGuinness (supra) it is not the liability of M. V. A. I. C. which is arbitrable but the liability of the owner or operator of the uninsured automobile. M. Y. A. I. C. argues, however, that the phrase “ caused by accident ” contained in the indorsement creates an additional standard or condition which must be determined by the court before the *949 indorsement becomes effective. We do not read the indorsement that way. The determination that a collision was or was not accidental is interwoven with the determination of the manner in which the collision occurred and this, in turn, will be decisive as to whether or not the claimant is ‘1 legally entitled to recover ”, the precise question the parties have agreed to arbitrate. It may be argued that because a claimant may be 1 ‘ legally entitled to recover ” from the uninsured operator for his assault as well as for his negligence and because M.Y.A. I. 0. would only be liable for his negligence, that, therefore, the court should adjudicate M.Y. A. I. C.’s responsibility before arbitration proceeds. The fallacy of this reasoning is simply that while the uninsured driver may be legally liable for assault, just as he might be legally liable for contract or liable for slander, no such questions are to be decided by the arbitrators or, indeed, by the courts. The question to be decided by the arbitrators is simply whether the uninsured owner or operator is legally liable to the claimant for bodily injuries caused by accident.
The terms “accidental” and “intentional” are mutually exclusive and a single determination upon a single record of testimony is all that is necessary to establish which term applies to the collision. The manner in which the collision occurred is at the heart of the arbitration. Consequently, the court is not required to make a determination in limine that the collision was or was not caused by an assault. The motion is accordingly denied.